Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8190 | **DATE** | July 17, 2001 |
| **CASE TITLE** | Ty, Inc. v. Ruth Perryman | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) x **Status hearing set for October 4, 2001 at 9:30 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Defendant's motion for summary judgment [18-1] is denied.  Plaintiff's motion for summary judgment [26-1] is granted in part and denied in part.  We deny the motion as to Counts I, II and IV, but grant the motion as to Count III (trademark dilution).  Defendant's motions to exclude exhibits 45, 55 through 57, and 100 [35-1, 37-1] is denied.  ENTER MEMORANDUM AND OPINION.

(11)         [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | **42** |
| X | Notices MAILED by judge's staff. | JUL 23 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to _____ | date mailed notice | |
| KAM courtroom deputy's initials | | 01 JUL 20 PM 2: 37 | |
| | Date/time received in central Clerk's Office | KAM mailing deputy initials | |
| | (Reserved for use by the Court) | | |

July 17, 2001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

JUL 2 3 2001

| | |
|---|---|
| TY INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 99 C 8190 |
| | ) |
| RUTH PERRYMAN, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment on all counts. For the reasons set forth below, the defendant's motion is denied as to all counts, and the plaintiff's motion is denied as to counts I, II, and IV, but granted as to count III.

### BACKGROUND

The plaintiff, Ty Inc. ("Ty"), manufactures and sells plush bean bag toys marketed as BEANIE BABIES, and variations of the BEANIE BABIES, including Teenie Beanie Babies, Beanie Buddies, Beanie Kids, E-Beanies, Pillow Pals, and Attic Treasures. The defendant, Ruth Perryman, is a second-hand dealer in bean bag toys, including Ty's BEANIE BABIES, which she sells over the Internet.

9

Ty brought this action to stop the Perryman from using the term "beanies" as a component of her business name, Bargain Beanies, and her Internet domain name, Bargainbeanies.com.

Ty first began selling its line of plush bean bag toys in 1993, when it introduced the BEANIE BABIES. Plaintiff's Statement of Undisputed Facts ("Pl.'s Facts), ¶ 6.[1] The BEANIE BABIES are shaped like animals, and a heart-shaped swing tag attached to each toy states, among other things, the name of the BEANIE BABY, its "date of birth," and includes a short poem. Ty sells BEANIE BABIES at a price of five to seven dollars apiece. Ty experienced a great deal of success in the market with the BEANIE BABIES and introduced a second line of products, Teenie Beanie Babies, in April of 1997. Id. at ¶ 10.

In 1998 and thereafter, Ty introduced three more lines of toys which include the word "Beanie" as a component of the name: Beanie Buddies, Beanie Kids, and E-Beanies. Id. at ¶¶ 13-15. The E-Beanies are sold through Ty's licensee, Ty Trade, on its web site, TyTrade.com. Id. at ¶ 15. Ty also sells other products, such as swing tag protectors, product display cases, calendars, collectors cards, and collectors card binders, all of which display some

---

[1] Perryman responds selectively to Ty's statement of facts, usually restricting her comments to areas in which she disagrees with Ty. To the extent she does not specifically deny or disagree with a factual assertion made by Ty, we consider that she is admitting the fact. See Local Rule 56.1 (b)(3)(B).

variation of the name "Beanie" in the packaging, on the product, or in the product description. _Id._ at ¶ 16, and exs. 27, 28, 29. Apart from the collectors cards, which were introduced in 1998, it is unclear when the other products were introduced. In 1998, Ty also introduced The Beanie Babies Official Club kit. _Id._ at ¶¶ 16 and 18. Ty has obtained several trademark registrations, including BEANIE BABIES, THE BEANIE BABIES COLLECTION, TY BEANIE BABIES OFFICIAL CLUB ORIGINAL BEANIE BABY, and THE BEANIE BUDDIES COLLECTION. _Id._ at ¶ 29.

Perryman established her Bargain Beanies business in November and December of 1997. Def's Statement of Undisputed Facts ("Def.'s Facts"), ¶ 1.[2] She registered the Bargainbeanies.com Internet domain name and obtained a Seller's Permit from the California State Board of Equalization in December of 1997. _Id._ and Def.'s exs. 4 and 5. According to Perryman, she began her business because she became aware of consumer demand for BEANIE BABIES. _Id._ at ¶ 6. She distinguishes her business from Ty's in a number of ways: she is a second-hand dealer in BEANIE BABIES and sells Ty products only on the secondary market, _id._ at ¶ 23, 65; she sells

---

[2] Ty does not deny this fact, but states that Perryman has not provided documentary evidence that she actually conducted business under the Bargain Beanies name in 1997. Pl.'s Response to Def's Facts, ¶ 1. Perryman did provide evidence in the form of her affidavit (¶ 16), and also attached as an exhibit copies of post office receipts for shipping her inventory to purchasers. _See_ Perryman Decl., ¶ 23; Def.'s ex. 7.

BEANIE BABIES that have been "retired" (i.e. no longer manufactured), id. at ¶ 66; she sells other toys that Ty does not manufacture; and she charges as little as four dollars and as much as one hundred dollars apiece. Id. at ¶ 69. Although she is not currently running the web site, she intends to start it again.

Ty first complained to Perryman about her use of the name Bargain Beanies and Bargainbeanies.com in November of 1999. Ty filed this lawsuit in December of 1999 alleging trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), and state law claims for deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act.

Ty argues that Perryman is attempting to leverage the goodwill it has established for its BEANIE BABIES and related products. According to Ty, the defendant's use of the mark Bargain Beanies confuses and deceives consumers into believing "that Defendant's business is associated with or licensed by Ty, or that the products sold by Defendants all originate with Ty."

The defendant insists, however, that the term "beanies" is nothing more than a generic term meaning bean bag toys generally. Therefore, defendant's use of the term "beanies" cannot constitute trademark infringement. In the alternative, she argues that the

term "beanies" is a descriptive term for which Ty had not established secondary meaning by December of 1997. She further argues that there is no likelihood of reasonable consumers confusing her business with Ty's.

The parties have filed cross-motions for summary judgment.

## ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party, see Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999), but we will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

We note that this is not the first case Ty has brought to enforce its asserted trademark rights. See e.g., Ty, Inc. v. Jones Group, Inc., 98 F. Supp.2d 988 (N.D. Ill. 2000), aff'd, 237 F.3d 891 (7th Cir. 2001)(affirming grant of preliminary injunction in

favor of Ty); <u>Ty, Inc. v. Softbelly's Inc.</u>, No. 00 C 5230, 2001 WL 125321 (N.D. Ill. February 9, 2001) (granting Ty a preliminary injunction); <u>Ty, Inc. v. Publications Int'l, Ltd.</u>, No. 99 C 5565, 2000 WL 1499449 (N.D. Ill. Oct. 6, 2000) (declining to grant summary judgment for Ty). Two of these cases were presented in a different procedural posture than this case, but all are helpful insofar as they review some of the evidence and legal principles at issue here. Of particular help is the <u>Publications International</u> case, which sets the stage for some of the issues presented here:

> The consumer frenzy over Beanie Babies can be attributed in part to Ty's unique marketing strategy. Ty creates scarcity in the market by selling its products only to small retail stores, and then only in small quantities. In addition, Ty periodically retires different Beanie Babies, taking them out of circulation and thus boosting their market value among collectors. Ty's marketing plan emphasizes the collectible nature of its products, and collectors are constantly on the lookout for new Beanie Babies.

> A thriving secondary Beanie Babies collector's market has emerged. Beanie Baby enthusiasts trade and sell Ty's products over the Internet, at yard sales, through classified ads, and through collectors' clubs. There have been hundreds - perhaps thousands - of newspaper articles and television news stories discussing the market for Beanie Babies, as well as a proliferation of Beanie-related web sites. Beanie Babies are not the exclusive province of child collectors. Ty's toys are sought after by potential investors who hope to capitalize on the sale of "rare" Babies, some of which fetch thousands of dollars at collectors' auctions.

<u>Publications Int'l, Ltd.</u>, 2000 WL 1499449 at *1; <u>see also</u> Pl.'s exs. 11, 19, 55, 56, 57, 63, & 65 (numerous newspaper articles

reporting on the BEANIE BABIES phenomenon, collectors of Ty products, and the secondary markets for these toys). With this background in mind, we turn to consideration of the parties' cross-motions for summary judgment.

## I.  Trademark Infringement, Unfair Competition, and Deceptive Trade Practices

In order to prevail on a claim of trademark infringement and unfair competition, the plaintiff may assert a registered trademark under 15 U.S.C. § 1114, or prove that it has a protectable unregistered trademark under 15 U.S.C. § 1125(a). Whether the plaintiff claims infringement of a federally registered trademark under § 1114, or an unregistered trademark under § 1125, the question of infringement is governed by the "likelihood of confusion" test. AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 615 (7th Cir. 1993); S Indust., Inc. v. Diamond Multimedia Systems, Inc., 991 F.Supp. 1012, 1017 (N.D.Ill.1998) (noting also that "[s]ection 1125(a) of the Lanham Act prohibits a broader range of practices than does § 1114 which applies only to registered marks.").

The two claims must be analyzed separately where, as in this case, the plaintiff's claims of infringement and unfair competition stem from both registered and unregistered marks.

A.   **Plaintiff's claim of infringement of a registered mark under § 1114**

Ty has not registered the mark "Beanies." By December of 1997, the only marks Ty had registered which included the word "beanie" were BEANIE BABIES and THE BEANIE BABIES COLLECTION. The question presented is whether the defendant infringed the trademarks BEANIE BABIES or THE BEANIE BABIES COLLECTION by using the names Bargain Beanies or Bargainbeanies.com.

Under § 1114, a trademark is protected against infringement by "colorable imitation[s]" of the mark which are "likely to cause confusion, or to cause mistake or to deceive" consumers as to the source of origin of the goods. Lippo v. Mobil Oil Corp., 776 F.2d 706, 719 n. 20 (7th Cir. 1985); Hormel Food Corp. v. Jim Henson Production, Inc., 73 F.3d 497, 502 (2nd Cir. 1996) (affirming denial of injunctive relief to plaintiff who claimed that its trademark SPAM was infringed by producer's creation of a puppet named "Spa'am"). Questions of likelihood of confusion involve all fact and no law, Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1428 (7th Cir. 1985), and these questions are usually reserved for the jury. Nike, Inc. v. Just Did It Enterprises, 6 F.3d 1225, 1233 (7th Cir. 1993) ("Whether customers would confuse MIKE and the swoosh design as affiliated with NIKE is a question of fact over which reasonable minds may differ.") Consequently, courts approach

motions for summary judgment on this issue with great caution. <u>AHP Subsidiary Holding Co.</u>, 1 F.3d at 616.

This is not a case comparing two <u>products</u> bearing similar trademarks which could create a likelihood that sales would be diverted to the plaintiff's competitor. <u>Cf. Jones Group, Inc.</u>, 237 F.3d 891 (comparing BEANIE BABIES to Beanie Racers); <u>Softbelly's Inc.</u>, 2001 WL 125321 (comparing BEANIE BABIES to Screenie Beanies). But trademark infringement is not limited to such cases; we must consider whether consumers would believe that the defendant's <u>business</u> is "in some way related to, or connected or affiliated with, or sponsored by" the plaintiff. <u>Nike, Inc.</u>, 6 F.3d at 1228.

The Seventh Circuit considers seven factors in evaluating likelihood of confusion: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. <u>Jones Group, Inc.</u>, 237 F.3d at 897. None of the seven factors is dispositive in itself. <u>See AHP Subsidiary Holding Co.</u>, 1 F.3d at 616.

1.  <u>**Similarity of the marks**</u>

The obvious similarity between the plaintiff's BEANIE BABIES and THE BEANIE BABIES COLLECTION marks and the defendant's "Bargain Beanies" mark is the use of the word "beanie(s)." It is this word that the plaintiff wishes to emphasize and the defendant tends to de-emphasize.

The plaintiff argues that "[i]f one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." The Jones Group, Inc., 237 F.3d at 898 (citing Henri's Food Prods. Co., Inc. v. Kraft, Inc., 717 F.2d 352, 356 (7th Cir. 1983)). We find unconvincing Perryman's argument that the term "beanies" is generic, see infra I.B.1.a, and therefore, not entitled to extra consideration. In a case comparing the BEANIE BABIES mark to "Screenie Beanies," Judge Norgle observed that "[e]ven though Softbelly's mark makes use of the term 'screenie' in conjunction with 'beanies,' it is still 'beanies' which the mark trades on." Softbelly's Inc., 2001 WL 125321, at *5. Comparing THE BEANIE BABY COLLECTION to "Beanie Racers," another court observed that "[t]he word 'Beanie' is a well-known and famous part of the Ty mark, rendering it the more salient portion of the mark and therefore deserving greater weight than the surrounding elements." The Jones Group, Inc., 237 F.3d at 899. These cases, however, were not decided on motions for summary judgment, but motions for

preliminary injunctions, in which the plaintiff bore the less onerous burden of showing a better than negligible chance of prevailing on the merits.

Even though the word "beanies" is an important element of the marks in question, we are still bound to compare the marks as a whole and as actually used. See Scandia Down Corp., 772 F.2d at 1431. The word "bargain" preceding "beanies" is significant. It connotes a negotiation where the purchaser agrees to pay a different price for the item than he would have paid had he bought it from the original seller. Indeed, that is the defendant's business -- to sell these toys on the second-hand market.[3]

> [A]s the differences separating the [defendants' domain] names from the plaintiff's mark become more noticeable, the similarities are likely to appear to consumers as more reflective of the fact that both are being used to designate something having to do with [the same business] rather than indicating a common source.

Trans Union LLC v. Credit Research, Inc., -- F. Supp.2d --, 2001 WL 303688 (N.D. Ill. March 26, 2001) (quoting from TCPIP Holding Co., Inc. v. Haar Communcations, Inc., 244 F.3d 88, 101-02 (2nd Cir. 2001)). Words like "screenie" or "racers" seem to signify types of BEANIE BABIES which resemble Ty's own variations: "Teenie Beanies"

---

[3]  For example, in December of 1998, the defendant offered for sale three 1997 Teenie Beanies of the same model, Patti the Platypus. The price varied, depending on the condition of the tag. The toy with a mint tag cost $18.75; creased tag, $15.50; no tag, $12.50.  Pl.'s ex. 107 (bargainbeanies.com web site).

or "Beanie Buddies." These marks do not imply that the products are unrelated to Ty. The word "bargain," on the other hand, may suggest a different sort of business than Ty is known to conduct.

In addition, the defendant displayed a disclaimer on her web site stating "Bargain Beanies is neither endorsed by nor affiliated with Ty, Inc., trademark holder of Beanie Babies." Pl.'s ex. 107. This tends to support the defendant's position that her mark is not confusing. Judge Zagel has made the following observation about disclaimers in the context of the second-hand market for BEANIE BABIES, which we believe applies with equal force in this case:

> The instant case involves a trademark owner whose products have achieved a unique status among many members of the public. There is a thriving market for second-hand Beanie Babies. Many participants in this market buy and sell Ty's products in non-traditional arenas such as at yard sales, through collectors' clubs, and over the Internet. Of course, it would be unreasonable to deny trademark protection to a manufacturer just because it had the "good fortune to have created a trade name ... that became valued by the consuming public." W.T. Rogers Co. v. Keene, 778 F.2d 334, 340 (7th Cir. 1985). The fact remains, however, that in the specific context of the market for Beanie Babies, a consumer may be less likely to think that any one publication about Beanie Babies emanates from, or is endorsed by Ty. A disclaimer may have more effect in these particular circumstances.

Publications Int'l, Ltd., 2000 WL 1499449, at * 12 (declining to grant summary judgment for Ty).

Taking all of these factors together, we believe that reasonable minds can differ as to whether the marks are sufficiently similar to create a likelihood of confusion.

## 2. Similarity of the Products

There is no product named "Bargain Beanies" to compare against BEANIE BABIES because "Bargain Beanies" is the name of a business. In identifying the appropriate comparison under these circumstances, we find instructive the case of Moore Business Forms, Inc. v. Ryu, 960 F.2d 486 (5th Cir. 1992). The plaintiff, Moore, manufactured business forms with the COMPURITE trademark. Id. at 488. The defendant began doing business about eleven years later under the name "CompuRite, Inc.," in which he sold, among other things, "a do-it-yourself version of Moore's product." Id. at 490. The court did not compare the business against the trademarked product; it compared the trademarked product against the product the defendant sold. Id. (affirming district court's judgment that there was a likelihood of confusion).

When the defendant began her business, the only toys she sold were Ty's BEANIE BABIES. Perryman Dep. at 64 (noting that she also sold tag protectors); Pl.'s ex. 106 at 6.[4]  In 1998, she added

---

[4]/ The defendant makes an argument about the use of the word "plush" toys versus "bean bag" toys. We are unsure what to make of this distinction, in view of the fact that defendant stated she began selling Ty bean bag toys in 1997 in her answer to plaintiff's interrogatories, and also acknowledged that BEANIE

other toys to her business, but about eighty-percent of her sales consisted of "Ty BEANIE BABIES, and Beanie Buddies, and Ty products." Perryman Dep., at 65, 74. The other products she sold were bean bag toys or bean bag toy-related products. Pl.'s ex. 106, at 6 (defendant's answer to interrogatories). Apart from the non-Ty products she sold, the defendant also sold some Ty bean bag toys that Ty itself does not sell, namely the "retired" BEANIE BABIES.

Confusion would be most likely in instances where the defendant sold BEANIE BABIES that Ty itself was also selling through its retail outlets. See Trans Union, LLC, -- F. Supp.2d --, 2001 WL 303688 (noting that visitors to the defendant's web site would find that the products offered were similar, sometimes identical, to those offered by the plaintiff). See also Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 463 (7th Cir. 2000) (concluding that the products need not be interchangeable, only similar).

On the other hand, it is not sufficient simply to conclude that because Perryman and Ty sell BEANIE BABIES, confusion would probably occur. As noted earlier, there is a thriving and well-known second-hand market for BEANIE BABIES. The defendant sells Ty

BABIES were the only plush toy she sold when her business began. She has presented no evidence that she sold anything other than BEANIE BABIES and tag protectors when her business began.

products only on the secondary market. Def.'s Fact, ¶ 65. To the extent the relevant class of customers and potential customers of BEANIE BABIES knows about this phenomenon, the likelihood that they believe Ty is affiliated with a second-hand dealer, especially of retired toys, is diminished. See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:5, at 23-17 (focusing on the confusion of members of the "relevant class of customers and potential customers"); see also Pl.'s exs. 11, 19, 55, 56, 57, 63, & 65 (articles reporting on the frenzy for collecting Ty's bean bag toys).

This element weighs in favor of the plaintiff, but there remains a genuine question of fact as to whether the similarity in the products creates a likelihood of confusion.

### 3. The area and manner of concurrent use

The concurrent use element focuses on the overlap of promotion, distribution, and sales of the products. Courts tend to focus on "the geographical area of distribution, whether there is evidence of direct competition between the relevant products, whether the products are sold in the same stores ... whether the products are sold through the same 'marketing channels.'" The Jones Group, Inc., 98 F. Supp.2d at 999.

The defendant points out that at the time the defendant established her business, Ty did not sell BEANIE BABIES over the Internet and has never sold BEANIE BABIES on the second-hand market. Ty argues that it has licensed TyTrade, Inc. to sell E-Beanies directly to consumers over the Internet, but admits that it does not sell BEANIE BABIES on the second-hand market.

According to the Eleventh Circuit, "[o]nce priority in the use of a mark for a particular class of goods or services has been established, the likelihood of confusion test is analyzed "as of the current time." <u>Carnival Brand Seafood Co. v. Carnival Brands, Inc.</u>, 187 F.3d 1307, 1311 n. 4 (11th Cir. 1999). The parties' concurrent use of the Internet is an important factor in Ty's favor. Once again, though, the two occupy very different places in the market, one catering to collectors interested in buying rare or retired BEANIE BABIES on the second-hand market, the other seeking to sell original BEANIE BABIES.

## 4. <u>Degree of Care Likely to be Exercised by Consumers</u>

Similar marks are more likely to confuse consumers as to source or sponsorship when less care is taken in purchasing a product. Arguably, consumers may exercise less care when purchasing low cost goods than when purchasing expensive goods.

The defendant argues that consumers will be more careful about buying her products because she charges as much as one hundred dollars for rare BEANIE BABIES and other Ty toys. Ty argues that its toys cost very little, selling for five to seven dollars, and "[t]he degree of care exercised by consumers will be minimal." Pl's Memo., at 8.

We view Ty's position with skepticism. In another case in which Ty was sued for trademark infringement, it argued that "BEANIE BABY customers are sophisticated about the product and will not be confused and will exercise care when purchasing." See Imperial Toy Corp. v. Ty, Inc., 1998 WL 601875 at *4 (N.D. Ill. 1998) (manufacturer of bean bag lion, "Roary," sued after Ty produced a BEANIE BABY lion, which it also named "Roary"). Quite apart from having taken a contrary position on this issue in 1998, Ty itself submitted numerous newspapers articles reporting on the BEANIE BABIES phenomenon, many of which discussed the emerging second-hand market and the sophistication of even pre-adolescent children in purchasing more valuable BEANIE BABIES. See Pl.'s Exs. 11, 55-57, 63. While we do not consider these articles as evidence of the facts asserted therein, we consider them as evidence that information about BEANIE BABIES, including the secondary market and the reported value of rare or retired toys, was widely published in

the mainstream media. See <u>Martin v. City of Indianapolis</u>, 192 F.3d 608, 613 (7th Cir. 1999).

On the whole, we believe consumers are likely to exercise care with respect to purchasing BEANIE BABIES, particularly those toys that are rare and carry a hefty price tag. See <u>Publications Int'l, Ltd.</u>, 2000 WL 1499449 at *13 (observing that collectors of BEANIE BABIES are "constantly concerned with the authenticity of their plush toys and identifying tags"). The more careful consumers are in making such purchases, the more likely they are to notice that the defendant's web site is not affiliated with Ty. <u>See id.</u> (determining that this element weighed in the defendant's favor because BEANIE BABIES collectors were more likely to notice the absence of Ty's famous heart-shaped logo on the cover of defendant's collector's guides entitled "For the Love of Beanie Babies" and "The Beanie Babies Collector's Guide"). This element weighs slightly in favor of the defendant.

## 5. <u>The strength of the plaintiff's mark</u>

The plaintiff's BEANIE BABIES mark is clearly very strong. <u>Id.</u> It has been used since 1993 on its products, which have attained extraordinary fame. Pl.'s exs. 11, 19, 55-57, 63 & 65 (newspaper articles). This element weighs in Ty's favor.

## 6. <u>Evidence of actual confusion</u>

While actual confusion is not necessary to reach a finding that confusion is likely, Eli Lilly, 233 F.3d at 465, Ty argues that there is evidence that at least three consumers were confused and believed that the defendant was associated with Ty. Ty points to Perryman's deposition testimony, in which she stated that three customers became angry that her prices were higher than those of other BEANIE BABIES retailers. Pl.'s ex. 64 at 129.

It is not entirely clear, however, that the customers believed defendant was affiliated with Ty. Perryman testified that when customers complained about her prices, her response was to explain that she does not have a Ty account and therefore could not sell BEANIE BABIES for five dollars. Although it may be telling that Perryman felt the need to clarify her relationship with Ty in her response, this evidence does not compel the conclusion that the customers believed she was affiliated with Ty.

### 7. The defendant's intent

There is no direct evidence that the defendant used the word "Beanies" in her business and domain names because she wanted to get a free ride on the goodwill Ty had established with the BEANIE BABIES mark. Ty's evidence on this point is that the defendant admitted in her deposition that she started Bargainbeanies.com because "it seem[ed] like an easier way to sell Beanie Babies and other plush toys." Pl.'s ex. 64 at 41. This statement is taken

out of context.  Perryman testified that she established the web site because it was easier than selling through e-mail or at shows.  Id.  She did not suggest that she invented the name Bargain Beanies because it would capture part of Ty's market.

As to circumstantial evidence, the plaintiff argues that because the six other factors favors it, the question of intent is easily resolved.  As our discussion of the above elements demonstrates, we disagree.

The evidence on the likelihood of confusion is such that reasonable minds can differ. Therefore, it is inappropriate to grant summary judgment on Count I either to Ty or Perryman.

**B.   Plaintiff's claim of unfair competition under § 1125(a)**

Section 1125 has been described as "the federal codification of traditional common law trademark rights."  S Industries, 991 F.Supp. at 1017.  In order to succeed in a claim under § 1125(a), the plaintiff has to show that it has a prior, protectable trademark, and that the defendant's use of the mark is likely to cause confusion.  The Jones Group, Inc., 237 F.3d at 897.

**1.   Protectable Trademark**

The parties hotly contest the issue of whether the term "beanies" is a mark that Ty is entitled to protect.  We agree with

the defendant that this court's analysis should be focused on the time period before she began her business in December of 1997. <u>See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.</u>, 188 F.3d 427, 433 - 34 (7th Cir. 1999); <u>S Industries</u>, 991 F. Supp. at 1018 ("It is axiomatic that the right to a distinctive mark belongs to the person who first continuously uses the mark to identify or distinguish goods or services in commerce."). The defendant argues that the term "beanies" is a generic term that is not entitled to trademark protection, or it is a descriptive term that had not attained secondary meaning by December of 1997. The plaintiff argues that it had established common law rights to the term "beanie(s)" through its continuous use of the word, and moreover, it became a well-known nickname for its BEANIE BABIES.[5] The burden is on Ty to show that "beanies" is entitled to protection under the Lanham Act. <u>Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.</u>, 149 F.3d 722, 727 (7th Cir. 1998).

The first step in determining whether the term "beanie(s)" is entitled to protection is to place it in one of five categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. <u>Mil-Mar Shoe Co., Inc. v. Shonac, Inc.</u>, 75 F.3d 1153, 1156-57 (7th Cir. 1996). Generic terms are

---

[5] Ty also argues that it owns the "Beanies" family of marks. It may, but Ty did not argue this point as to the relevant December 1997 time frame.

words commonly used to name or designate a kind of good rather than a particular brand; for that reason, trademarking of generic terms is forbidden. <u>Door Sys., Inc. v. Pro-Line Door Systems, Inc.</u>, 83 F.3d 169, 171 (7th Cir. 1996). Descriptive terms are those which describe the ingredients, qualities, or characteristics of an article of trade, and are protected only if the term has achieved "secondary meaning" in the relevant market. <u>Mil-Mar Shoe Co., Inc.</u>, 75 F.3d at 1156-57. Suggestive, arbitrary, and fanciful marks are inherently distinctive, and entitled to full protection. <u>Id.</u>

### a. **Generic term**

Whether "beanie(s)" is a generic term is a question of fact, but it may be resolved on a motion for summary judgment if the evidence is so one-sided that "there can be no doubt about how the question should be answered." <u>Door Sys., Inc.</u>, 83 F.3d at 171. Evidence of genericness may come from a number of sources, including consumer surveys, dictionaries, the media's use of the term, and competitors' use of the term. <u>See</u> <u>Softbelly's Inc.</u>, 2001 WL 125321, at *3. The burden is on the claimant to establish that the mark is not generic. <u>Mil-Mar Shoe Co.</u>, 75 F.3d at 1156.

If a word appears in the dictionary, "this would be powerful evidence that the term was generic, because nouns and other nominatives listed in dictionaries .... denote kinds rather than

specific entities." <u>Door Sys., Inc.</u>, 83 F.3d at 171. The word "beanies" appears in the dictionary, but has nothing to do with bean bags. According to Websters' Third New International Dictionary, a "beanie" is "1: a small round tight-fitting skullcap worn esp. by schoolboys and collegians 2: a woman's small round hat worn off the face." <u>See also</u> <u>The Jones Group</u>, 98 F. Supp.2d at 994 (quoting an identical definition from Merriam Webster's Collegiate Dictionary (10th Ed.1993)). Ty also introduces numerous newspaper articles from 1996 and 1997 which use the term "beanies" not to refer to bean bag toys generally, but to refer to BEANIE BABIES or Teenie Beanie Babies specifically. <u>See</u> Exs. 11, 19, 55-57, 63, 65; <u>see also</u> <u>Softbelly's Inc.</u>, 2001 WL 125321, at *3 (discussing some of the same evidence and determining that Ty had a better than negligible chance of proving that "beanies" is not generic).[6] Together, these factors are powerful evidence that the term "beanies" is not simply a generic term.

The defendant argues that the term "beanies" is simply an abbreviation of "bean bag" with a suffix attached, and that the plaintiff cannot escape a generic classification by its variant spelling. In support of this proposition, she cites <u>Miller Brewing Co. v. Jos. Schlitz Brewing Co.</u>, 605 F.2d 990, 995-97 (7th Cir.

---

[6] Ty also presents evidence of consumer surveys. However, these surveys apparently were taken in 1998, and therefore are not directly relevant to the inquiry here.

1979), and <u>National Conf. of Bar Examiners v. Multistate Legal Studies</u>, 692 F.2d 478, 488 (7th Cir. 1982). In <u>Miller Brewing Co.</u>, the court concluded that the word "light" is generic, and that it could not be appropriated simply by misspelling it "lite." In <u>Bar Examiners</u>, the court stated that abbreviating the generic name "multistate bar examination" to "MBE" did not alter its generic quality. These cases are not apposite. "Beanies" does not sound enough like "bean bag" to be considered a misspelling of it; nor is "bean" a common abbreviation for "bean bag" in the way that an acronym is a common abbreviation of multiple-word names. Neither of these cases suggests that a generic term remains generic if it is abbreviated and a suffix is added to it.

Perryman further argues that "beanie(s)" has been used generically by the media, the plaintiff's competitors, and prior companies which have manufactured bean bag toys. As to media uses, the defendant produces selected pages of four magazines from 1998 or later entitled "Mary Beth's Beanie World Magazine," "Beanie Update Trader," and "Beanie Collector." Def.'s exs. 1-3, 46. This material is not particularly helpful in that all of the magazines feature photographs of Ty's BEANIE BABIES on the cover; only one includes other bean bag toys in the cover shot. <u>Id.</u> In fact, the publisher's note on page two of "Mary Beth's Beanie World Magazine" refers to "Ty Beanie" as distinct from "non-Ty bean bag toys."

Def.'s ex. 1, at 2. The defendant points out only six magazine pages in which the word "beanies" is used to refer to non-Ty bean bag toys. It is true that genericness can be shown by the unchallenged use of the mark by competitors. The Jones Group, 98 F.Supp.2d at 994. However, this factor cuts in Ty's favor because it challenged the use of the "beanies" name in connection with the three magazines named above, as well as numerous other entities using the term. Pl.'s Resp. to Def.'s Fact, ¶ 13; Pl.'s exs. 74(a)-(w); 75-99. The defendant's argument that these policing efforts did not take place until after 1998 is unavailing; she has not submitted evidence that these magazines used the term "beanies" to refer to non-Ty toys prior to 1998.

Perryman also argues that Ty did not originate the word "beanie" and, in fact, prior to 1986, six other toy manufacturers registered trademarks which included "beanie" as an element: Super Beanies, Beanie Camper, Honey Beanie, Teenie Beanies, Finger Beanie, and Easter Beanie. Def.'s Facts at ¶¶ 52-62. Only three of these products were bean bag toys, and all of the registrations have since been canceled. The defendant's citation to Mil-Mar Shoe Co. does not help her position; in that case, the defendant provided evidence that over 8,000 retail stores used the word at issue ("warehouse") in their names. 75 F.3d at 1159. The defendant's evidence is paltry in comparison.

Perryman's argument that the term "beanies" is found in patent and trademark literature as a name for bean bag toys is also unconvincing. There is a 1999 patent for an instructional bean bag toy named "Alpha Beanie Buddies," def.'s ex. 49, but the patent office uses the term "bean bag alphanumeric figure" to describe the product, not "beanie." The trademark literature defendant presents is a 1999 application for the mark "zmillennium" in which the applicant described his goods as "toys, mostly, beannie type," among other things. The Patent and Trademark Office did not categorize the applicant's goods using the word "beanie"; it simply recited his description of goods in its decision to refuse registration of the mark. This evidence at most establishes that the term "beanie" is descriptive rather than suggestive, arbitrary, or fanciful.

In sum, we find the defendant's evidence of genericness sparse at best. In contrast, the plaintiff's evidence is convincing, and we conclude that there is no genuine issue as to whether the term "beanies" is generic. It is not.

### b. Descriptive Term and Secondary Meaning

If "beanies" is not generic, then it is at least descriptive.[7] A claimant is entitled to protect a descriptive term only if it has

---

7/ Ty asserts in a conclusory way that "beanies" is suggestive, but neither argues the point nor cites supporting case law. Plaintiff's Memorandum at 10. We will only consider the arguments it has presented.

acquired secondary meaning "in the collective consciousness of the relevant community." See Platinum Home Mortg. Corp., 149 F.3d at 727 (quoting Mil-Mar Shoe, 75 F.3d at 1157). "Secondary meaning refers to the manner in which a consumer identifies a specific business or a business's reputation by a particular trademark." Id. at 728. To establish public identification, courts may consider several factors, including (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony, and (5) consumer surveys. Id. Ty must establish secondary meaning by the time Perryman began using "beanies" as part of her mark.[8] G. Heilman Brewing Co., Inc. v. Anheuser-Busch Inc., 676 F. Supp. 1436, 1468 (E.D. Wisc. 1987), aff'd, 873 F.2d 985 (7th Cir. 1989) (citing cases).

As to the first factor, Ty points out that it established a popular web site to market and sell its products and that its licensee advertised its Teenie Beanie Babies as "Teenie Beanies." The web site, however, did not exist in December of 1997, and Ty does not state when the Teenie Beanies advertisements ran. There is no assertion that Ty ran advertisements in 1997 specifically using the term "beanies" by itself. On the other hand, the media

---

[8]/ Ty does not directly challenge the defendant's assertion that the relevant time frame is December of 1997. It appears to accept this as the appropriate date by offering evidence of pre-1998 use of the term "beanie(s)," but at other times either offers post-1998 evidence or does not identify a time frame at all.

used the word "beanies" repeatedly to refer specifically to Ty's BEANIE BABIES. Pl.'s ex. 65(c)-(gg) (media using "Beanie(s)" in headlines to refer to BEANIE BABIES); see also Pl.'s ex. 63(b)-(u) (media referring to Teenie Beanie Babies as "Teenie Beanies" prior to 1998).[9] Examples include the Atlanta Constitution's May 19, 1997 report, "Beanie Bonanza"; Tulsa World's April 25, 1997 article, "Beanie Stampede"; The Chattanooga Times' March 26, 1997 article, "The Beanie Boom," to name a few. The defendant concedes the admissibility of plaintiff's group exhibit 65. Def.'s Reply at 4.

Ty's use of the word "Beanies" prior to 1998 was limited to poems located on the swing tags of six models of the BEANIE BABIES (out of more than 150 models), as well as shipping boxes, and newsletters to Ty dealers. As early as 1995, Ty began using the word "Beanie(s)" on swing tags accompanying six BEANIE BABY models: Ziggy, Grunt, Dotty, Waves, Tuffy, and Garcia. See Pl.'s fact 22; Exs. 39-44, 47-51. The word was used only in the context of a poem about the animal. For example, the poem on the swing tag of Dotty the Dalmatian's swing tag reads: "The Beanies all thought it was a big joke/ While writing her tag, their ink pen broke/ She got in

---

[2]/ The plaintiff also submits exhibits 11(d)-(kkkk), 19(a)-(v), 55 and 57, which are over one hundred articles, many of which refer to BEANIE BABIES or Teenie Beanie Babies as "beanies" in the text of the article itself rather than the headline.

the way, and got all spotty/ So now the Beanies call her Dotty!"
Pl.'s ex. 42, 49. Although the first letter was capitalized, no
"TM" symbol appeared on the tags. "Beanie(s)" bore no distinctive
print style, had no different color, nor did it occupy a prominent
position on the tag. About 15 million toys bearing these swing
tags were sold prior to 1998.[10] Pl.'s ex. 45; see infra III. In
addition, Ty shipping boxes were marked "Beanies™" prior to 1998.
Pl.'s Facts, ¶ 29. The toys themselves were not sold out of
shipping boxes, nor is there any contention toys were mailed to
consumers in these types of boxes. Ty also used the word "Beanies"
in newsletters to dealers beginning in 1995, but there is no
evidence consumers at large ever saw these newsletters. Id. at ¶
31.

Neither party has offered consumer testimony. Ty presents a
consumer survey, but the results were gathered from interviews
taken from June 15 through June 22, 2000. Pl.'s ex. 100, at 7.
This survey, therefore, is not relevant to consumer understanding
of the term "beanies" in December of 1997.

---

[10]/ The defendant argues that only two of the tags submitted as evidence
by the plaintiff (those for Garcia and Grunt) were circulated prior to 1998, and
swing tags used between 1994 and early 1996 had no poems. Def.'s response to
Pl.'s Fact 22. However, she provides no evidence to support her claim that swing
tags originally had no poems. The plaintiff, on the other hand, provides
evidence that the six BEANIE BABIES models at issue "contained the BEANIES
trademark in their swing tags during the entire time they were marketed and sold
by Ty." Rogers Decl., at ¶ 17.

The most compelling evidence in Ty's favor is the media's use of the term "beanies" to refer to its products prior to 1998. We agree with Ty that the media's use of "beanies" to refer to Ty products was so widespread and continuous by December of 1997 that it had become a nickname for BEANIE BABIES and other Ty products. This is true even if Ty's own use of the mark was not particularly widespread.

> For the purpose of establishing public identification of a mark with a product or service, the fact-finder may rely on the use of the mark in 'advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications,' T.A.B. Systems v. Pactel Teletrac, 77 F.3d 1372, 1375 (Fed. Cir. 1996) .... In addition, courts have recognized that "abbreviations and nicknames of trademarks or names used only by the public give rise to protectable rights in the owners of the trade name or mark which the public modified." Nat'l Cable Television Assoc. v. Am. Cinema Editors, Inc., 937 F.2d 1572, 1577 (Fed. Cir. 1991). Such public use of a mark is deemed to be on behalf of the mark's owners.

Johnny Blastoff, Inc., 188 F.3d at 434 (affirming grant of summary judgment to defendant where plaintiff had appropriated the name "Rams" for his fictional sports team). The defendant argues that this analysis only applies to exclusive uses of a term to designate the product and does not apply to descriptive terms. She cites Coca-Cola Co. v. Busch, 44 F. Supp. 405, 409 (E.D. Pa. 1942) in support of her position, but that case says nothing about excluding descriptive terms. As to exclusive use, the court cited two cases in which the plaintiff had never applied the claimed nickname to

its goods but the defendant competitor had.  <u>Id.</u>   The opposite is true here:  Ty applied the "beanie" mark to its goods, shipping boxes, and in newsletters.  Moreover, the Seventh Circuit does not identify the elements defendant urges, nor does Jerome Gilson do so in his treatise, <u>Trademark Protection and Practice</u>, § 2.06.

We find, therefore, based on the evidence of Ty's use of the word "beanie(s)" beginning in 1995 and the extensive evidence that the term had become a nickname for BEANIE BABIES before 1998, that Ty has met its burden of showing that it has a protectable interest in the "beanie(s)" mark.  There is no genuine issue.

## 2.   **Likelihood of Confusion**

The next question is whether Ty has established a likelihood of confusion between the term "beanies" and the defendant's use of Bargain Beanies or Bargainbeanies.com.[11]  The analysis of this issue is substantially identical to that already undertaken.

Summary judgment in favor of either party on Count II would be inappropriate.  <u>See supra</u> I.A.

## II.  **Trademark Dilution**

---

[11]/    The parties agree that Ty's state law claims for deceptive trade practices should be analyzed under the likelihood of confusion standard, as well. <u>See</u> <u>TMT North Am., Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 881 (7th Cir. 1997) (discussing only the Lanham Act although the case also raised state law claims because "'federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent'" and neither party had suggested that state law presents distinct considerations).

The Federal Trademark Dilution Act, 15 U.S.C. § 1125(c)(1) provides that:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

In order to prove trademark dilution, Ty must establish that: (1) its logo and trade name are famous trademarks; (2) Perryman's use began after the marks had become famous; (3) Perryman's use "causes dilution" of the trademarks; and (4) Perryman's use is commercial and in commerce. <u>Trans Union LLC</u>, – F. Supp.2d –, 2001 WL 303688, (citing <u>Eli Lilly</u>, 233 F.3d at 466).

The defendant disputes that Ty's trademarks were famous by the time she began her business, but offers almost no support for her position. As we have noted throughout, Ty's BEANIE BABIES and "Beanie(s)" marks attained extraordinary success in the market by December of 1997. Numerous newspapers from all over the country ran articles about consumers' frenzy to collect the toys in 1996 and 1997. <u>See</u> Pl.'s Exs. 11, 19, 55-57, 63 & 65. We have no trouble finding that the plaintiff's mark was famous in December of 1997. The parties do not dispute that the defendant used the "Beanies" mark in commerce.

The only real issue, then, is whether the defendant's web site dilutes Ty's trademarks. See Trans Union LLC, 2001 WL 303688 (discussing dilution in the context of Internet use).

> Dilution "means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of" competition between the parties or likelihood of confusion among consumers. 15 U.S.C. § 1127. Dilution occurs in cyberspace when defendant's use "lessens the capacity of [plaintiff] to identify and distinguish its goods and services by means of the Internet." Intermatic [Inc. v. Toeppen,] 947 F.Supp. [1227] at 1240 [N.D. Ill. 1996]; see Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1326 (9th Cir.1998). A showing of actual economic harm is not required to establish dilution in this circuit. Eli Lilly, 233 F.3d at 468. Instead, [the plaintiff] need only demonstrate a likelihood of dilution based on the renown of its trademarks and the similarity between those marks and the allegedly diluting uses of defendant[]. Id. at 468-69.

Id. (emphasis added).

To the extent the plaintiff claims dilution of its BEANIE BABIES mark, we agree with the defendant that there is a genuine factual question as to whether that mark is sufficiently similar to "bargainbeanies.com." See infra I.A.1. The defendant does not make the same argument regarding the "beanies" mark, but rather reverts to her position that "beanies" is a generic term not entitled to trademark status. Def.'s Memo. at 15; Def's Reply at 14. We disagree, see infra I.B., and in view of defendant's apparent concession on this issue, find that the two are similar.

As to dilution, the plaintiff argues that the defendants' use of the term "beanies" on her bargainbeanies.com web site will cause Ty to become associated with "an unimaginable variety of products of varying quality (including competing products)." Indeed, Perryman does sell third party toys on her web site, but she argues that Ty is not protected by the trademark laws from having its products sold side-by-side with third party brands. That may be, but Perryman admits that she referred to third party toys as "beanies" on her web site. Pl.'s Facts, ¶ 57; Pl.'s ex. 107. The particular page at issue identifies Ty's toys, but in another category labeled "other beanies," lists a number of third party toys. This clearly lessens the capacity of the plaintiff to distinguish its goods from competitors. See 15 U.S.C. § 1127.

Ty has met its burden of showing that the defendant's use of the term "beanies" dilutes its protectable marks. Therefore, because there is no genuine dispute, we grant summary judgment in favor of Ty on Count III, and deny the defendant's motion for summary judgment on Count III.

## III.  Defendant's Motions to Exclude Evidence

The defendant has moved to exclude plaintiff's exhibits 55-57, and 100 on the grounds that they constitute impermissible hearsay. The motion is denied as moot inasmuch as the court did not consider

exhibit 100 for other reasons, and only considered the newspaper articles to the extent the hearsay rules permit.

The defendant also moves to exclude plaintiff's exhibit 45 under Federal Rule of Civil Procedure 37(c). The defendant argues that during discovery she requested that Ty provide yearly dollar and unit volume sales for certain products, including BEANIE BABIES. On July 10, 2000, Ty responded that it does not record its sales records in a manner that would allow it to obtain or provide this information. On March 30, 2001, the day Ty filed it's cross-motion for summary judgment, the plaintiff delivered a copy of exhibit 45 to the defendant, which is a chart reflecting sales of selected models of BEANIE BABIES per month. In particular, the chart included all six BEANIE BABIES which had the mark "Beanie" on the poem of their swing tags, but does not provide all of the information the defendant requested in her interrogatory.

When the parties appeared before the court, plaintiff's counsel explained that the evidence was turned over two days after Ty found it. The exhibit was apparently transmitted by facsimile, and the date March 28, 2001 appears on the document. Although the circumstances are a bit puzzling, the defendant has offered no concrete reason to disbelieve counsel's representations to the court.

## CONCLUSION

For the reasons stated above, we deny the defendant's motion for summary judgment. We deny the plaintiff's motion for summary judgment as to Counts I, II, and IV, but grant the motion as to Count III (trademark dilution). We deny the defendant's motions to exclude exhibits 45, 55 through 57, and 100.

DATE: July 17, 2001

ENTER: _____

John F. Grady, United States District Judge