Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8190 | **DATE** | October 10, 2001 |
| **CASE TITLE** | Ty, Inc. v. Ruth Perryman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☒ ~~Status hearing set for October 2001 at 9:30 a.m.~~

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for clarification and to alter or amend summary judgment on Count III of the plaintiff's complaint [43-1] is granted in part and denied in part. The motion to clarify is granted, and we deny the motion to alter or amend judgment. ENTER MEMORANDUM AND OPINION.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| X | Notices MAILED by judge's staff. | | | | |
| | Notified counsel by telephone. | | | OCT 12 2001 date docketed | 47 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | FOR DOCKETING | docketing deputy initials | |
| | Copy to _____ | | 01 OCT 10 PM 4:37 | date mailed notice | |
| KAM | courtroom deputy's initials | | | KAM | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |
| | | | (Reserved for use by the Court) | | |

99-8190.012-MEV                                          October 5, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TY INC.,                         )
                                 )
            Plaintiff,           )
                                 )
    v.                           )   No. 99 C 8190
                                 )
RUTH PERRYMAN,                   )
                                 )   **DOCKETED**
            Defendant.           )
                                     OCT 1 2 2001

## MEMORANDUM OPINION

Before the court is the defendant's motion for clarification and to alter or amend summary judgment on Count III of the plaintiff's complaint, which we entered on July 17, 2001. For the reasons explained below, we grant the motion for clarification and deny the motion to alter or amend judgment.

## BACKGROUND

The facts of this case were described in our earlier opinion, and are as follows:

> The plaintiff, Ty Inc. ("Ty"), manufactures and sells plush bean bag toys marketed as BEANIE BABIES, and variations of the BEANIE BABIES, including Teenie Beanie Babies, Beanie Buddies, Beanie Kids, E-Beanies, Pillow Pals, and Attic Treasures. The defendant, Ruth Perryman, is a second-hand dealer in bean bag toys, including Ty's BEANIE BABIES, which she sells over the Internet. Ty brought this action to stop Perryman from using the term "beanies" as a component of her business name, Bargain Beanies, and her Internet domain name, Bargainbeanies.com.
>
> Ty first began selling its line of plush bean bag toys in 1993, when it introduced the BEANIE BABIES. Plaintiff's Statement of Undisputed Facts ("Pl.'s

47

Facts), ¶ 6. The BEANIE BABIES are shaped like animals, and a heart-shaped swing tag attached to each toy states, among other things, the name of the BEANIE BABY, its "date of birth," and includes a short poem. Ty sells BEANIE BABIES at a price of five to seven dollars apiece. Ty experienced a great deal of success in the market with the BEANIE BABIES and introduced a second line of products, Teenie Beanie Babies, in April of 1997. Id. at ¶ 10.

In 1998 and thereafter, Ty introduced three more lines of toys which include the word "Beanie" as a component of the name: Beanie Buddies, Beanie Kids, and E-Beanies. Id. at ¶¶ 13-15. The E-Beanies are sold through Ty's licensee, Ty Trade, on its web site, TyTrade.com. Id. at ¶ 15. Ty also sells other products, such as swing tag protectors, product display cases, calendars, collectors cards, and collectors card binders, all of which display some variation of the name "Beanie" in the packaging, on the product, or in the product description. Id. at ¶ 16, and exs. 27, 28, 29. Apart from the collectors cards, which were introduced in 1998, it is unclear when the other products were introduced. In 1998, Ty also introduced The Beanie Babies Official Club kit. Id. at ¶¶ 16 and 18. Ty has obtained several trademark registrations, including BEANIE BABIES, THE BEANIE BABIES COLLECTION, TY BEANIE BABIES OFFICIAL CLUB ORIGINAL BEANIE BABY, and THE BEANIE BUDDIES COLLECTION. Id. at ¶ 29.

Perryman established her Bargain Beanies business in November and December of 1997. Def's Statement of Undisputed Facts ("Def.'s Facts"), ¶ 1. She registered the Bargainbeanies.com Internet domain name and obtained a Seller's Permit from the California State Board of Equalization in December of 1997. Id. and Def.'s exs. 4 and 5. According to Perryman, she began her business because she became aware of consumer demand for BEANIE BABIES. Id. at ¶ 6. She distinguishes her business from Ty's in a number of ways: she is a second-hand dealer in BEANIE BABIES and sells Ty products only on the secondary market, id. at ¶ 23, 65; she sells BEANIE BABIES that have been "retired" (i.e. no longer manufactured), id. at ¶ 66; she sells other toys that Ty does not manufacture; and she charges as little as four dollars and as much as one hundred dollars apiece. Id. at ¶ 69. Although she is not currently running the web site, she intends to start it again.

>	Ty first complained to Perryman about her use of the name Bargain Beanies and Bargainbeanies.com in November of 1999. Ty filed this lawsuit in December of 1999 alleging trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), and state law claims for deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act.

Ty v. Perryman, No. 99 C 8190, 2001 WL 826893 at *1-2 (N.D. Ill. July 17, 2001). The parties made cross motions for summary judgment on all claims, and on July 17, 2001, we issued a ruling denying the defendant's motion for summary judgment on all claims, and denying the plaintiff's motion for summary judgment on Counts I, II, and IV. Id. However, finding that Ty has a protectible interest in the term "beanies," we granted the plaintiff's motion for summary judgment on its claim of trademark dilution (Count III).

The defendant now moves for a clarification of our summary judgment order. She notes that in granting summary judgment on Ty's trademark dilution claim, we highlighted the defendant's use of the term "beanies" to refer to non-Ty products on a particular page of her website. Defendant requests that we clarify our order to state whether her use of the domain name "bargainbeanies.com" or the business name "Bargain Beanies" also dilutes Ty's trademark. In the event we answer in the affirmative, the defendant moves to alter or amend judgment.

## ANALYSIS

We grant the defendant's motion for clarification. In our order granting summary judgment to Ty for trademark dilution, we held that "Ty has met its burden of showing that the defendant's use of the term 'beanies' dilutes its protectable marks." Id. at *14. Our holding was not limited to the particular page of defendant's website using the term "beanies" to refer to third party products. The defendant's use of the mark "beanies" in the name "Bargain Beanies" and "bargainbeanies.com" also has the effect of diluting Ty's trademark.

The defendant also moves pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend judgment. The defendant notes that to prevail on a claim of trademark dilution, the court must find, among other things, that the trademark was famous and that it was similar to the defendant's mark. The defendant argues that it was improper to grant summary judgment on this claim because there was insufficient evidence that Ty's "beanies" mark was famous by December of 1997. In addition, the defendant argues that this court was incorrect to conclude that she conceded her marks are similar to Ty's "beanies" mark. Finally, she argues that the plaintiff failed to address her laches defense and this precludes summary judgment.

## I. **Fame of the "Beanies" Mark**

Defendant argues that there was insufficient evidence to find that Ty's "beanies" mark was famous by December of 1997. She argues that this court considered post-1998 evidence from other cases involving Ty to determine the "beanies" mark was famous, and gave short shrift to the evidence she presented.

This court did not adopt the findings of fact made in other cases involving Ty products. The analysis of whether Ty's "beanies" mark was famous by 1998 is somewhat similar to the question of whether it had attained secondary meaning. Our analysis on both of these issues was limited exclusively to the evidence presented by the parties. We explicitly refused to consider any post-1998 evidence. See id. at 11-13. Defendant cannot point to a single instance where we considered post-1998 evidence in determining the question of secondary meaning or fame. We did not even cite any other cases involving Ty in these sections of our opinion.

It is true that in other sections of our opinion, where the fame of the "beanies" mark was not at issue, we cited other cases involving Ty. To the extent these cases reviewed some of the same evidence presented here, their legal analyses of that evidence was helpful or lent support to our position. For example, we cited a case involving the question of whether the term "beanies" was a generic term, which quoted a dictionary definition identical to the one we discussed. Id. at *10 (citing Ty, Inc. v. The Jones Group, 98 F. Supp.2d 988 (N.D. Ill 2000)). We cited the plaintiff's

evidence of newspaper articles to support the conclusion that in 1996 and 1997 the media used the word "beanies" to refer to Ty products rather than bean bag toys generically. Id. Although we included a citation to another case involving Ty, we specifically noted that it reviewed only some of the same evidence presented in this case and was presented in a different procedural posture. See id. (citing Ty, Inc. v. Softbelly's Inc., No. 00 C 5230, 2001 WL 125321 (N.D. Ill. Feb. 9, 2001)). At no time did we adopt the factual findings of another court to determine an issue involved in this case.[1]

As to the defendant's argument that we erred in finding that "beanies" was famous by December of 1997, we decline to reconsider our ruling. Our Memorandum Opinion discussed at length and in detail the evidence submitted by both parties. Defendant fails to establish any manifest errors of law or fact nor does she present any newly discovered evidence. See Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986) (stating that motions to alter or amend a judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and that "[t]hese motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.").

---

[1] The defendant also argues that we adopted the findings of other courts which considered "beanies" the salient portion of Ty's BEANIE BABIES mark, and that this "logically influenced the 'famous' issue." Defendant's Memorandum, at 2. This argument is almost frivolous. It is true that we discussed other Ty cases in our likelihood of confusion analysis, but we did not adopt their conclusions, and we specifically considered "the marks as a whole and as actually used." Perryman, 2001 WL 826893 at *4-5. Moreover, defendant does not explain how this element of the likelihood of confusion analysis has any bearing on the question of fame.

Defendant's motion to alter or amend judgment on the issue of whether "beanies" had attained famous status by 1998 is denied.

II. **Similarity of "Beanies" Mark to "Bargain Beanies"**

In our Memorandum Opinion we stated:

> To the extent the plaintiff claims dilution of its BEANIE BABIES mark, we agree with the defendant that there is a genuine factual question as to whether that mark is sufficiently similar to "bargainbeanies.com." The defendant does not make the same argument regarding the "beanies" mark, but rather reverts to her position that "beanies" is a generic term not entitled to trademark status. We disagree, and in view of defendant's apparent concession on this issue, find that the two are similar.

Perryman, 2001 WL at 826893 at *14 (internal citations omitted). The defendant argues that she did not concede the similarity of the two names.

The defendant's summary judgment briefs contain no argument that Ty's "beanies" mark is dissimilar to her "bargainbeanies.com" or "Bargain Beanies" marks. Even though the plaintiff specifically compared the "beanies" mark against the defendant's marks in its summary judgment brief, the defendant made no effort to compare the two. See Ty's Memorandum in Support of Its Cross-Motion for Summary Judgment, at 6-7. Instead, the sections of defendant's brief discussing similarity of marks state either that "beanies" is not entitled to trademark protection in the first instance or that the "beanies" component of Ty's registered marks should not "be singled out." If the defendant did not deliberately concede this point by failing to argue it, she certainly waived it. See Turner v. Chicago

Housing Authority, 760 F. Supp. 1299, 1310 (N.D. Ill. 1991) (dismissing count of plaintiffs' complaint because they failed to address defendant's argument, although they did not expressly concede the point).

We will clarify one point. In our analysis of the plaintiff's trademark infringement claim, we undertook the "likelihood of confusion" analysis, in which we compared the similarity of the plaintiff's registered marks, BEANIE BABIES or THE BEANIE BABIES COLLECTION, against Perryman's marks. We noted that because "bargain" is an element of Perryman's marks and that word connotes a different type of business than Ty is known to conduct, the marks were not sufficiently similar to conclude that confusion was likely. Perryman, 2001 WL 826893 at *5. The same analysis does not apply in a trademark dilution claim where the defendant uses the whole of the plaintiff's mark, here "beanies," in the defendant's domain and business names. See PACCAR, Inc. v. Telescan Technologies, L.L.C., 115 F. Supp.2d 772, 779 (E.D. Mich. 2000)(stating that likelihood of confusion is not a necessary element of trademark dilution, and holding that use of plaintiff's trademarks (i.e. "kenworth") as an element of defendant's domain names (i.e. "kenworthusedtrucks.com") constituted trademark dilution). This is so because defendant's use of Ty's "beanies" mark in her domain name could cause consumers to identify it with "an unimaginable variety of products" appearing on her web site. Perryman, 2001 WL 826893 at *14; see also PACCAR, 115 F. Supp.2d at

780 (noting that plaintiff was at defendant's mercy because plaintiff had no influence or control over what appeared on defendant's web sites).

The defendant's failure to argue the similarity of Ty's "beanies" mark to her own marks was tantamount to a concession, with no practical difference. We reaffirm our holding that defendant's use of "bargainbeanies.com" and "Bargain Beanies" dilutes the plaintiff's "beanies" trademark.

### III. Laches Defense

Finally, the defendant argues that summary judgment should not have been granted on Count III because the plaintiff failed to overcome her laches defense. We disagree. "Where the nonmoving party fails to make a showing sufficient to establish the existence of an essential element on which he would bear the burden of proof at trial, summary judgment should be entered against him." Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). The defendant bears the burden of proof on the affirmative defense of laches. Central States Southeast and Southwest Areas Pension Fund v. Heineman Distributing, No. 93 C 1246, 1994 WL 496730, *3 (N.D. Ill. Sept. 9, 1994) (granting partial summary judgment to the plaintiff where the defendant failed to prove its laches defense). In Logan v. Commercial Union Ins. Co, 96 F.3d 971, 979 (7th Cir. 1996), however, the Seventh Circuit clarified that while the movant

is not required to <u>disprove</u> the nonmovant's defense, it must "demonstrate[] that the nonmovant will be unable to produce any evidence at trial supporting an essential element of a claim for which the nonmovant bears the burden of proof."

Here, however, the defendant forfeited this argument by failing to raise it either in her response to the plaintiff's motion for summary judgment or in her own motion for summary judgment. <u>See id.</u> (noting that plaintiff forfeited his argument by failing to raise it in his response to the motion for summary judgment). This court undertook an extremely time-consuming review of the parties' briefs and evidence presented, all of which amounted to a mountain of paperwork. It strikes us as unreasonable for the defendant to remain mute on the question of her affirmative defense, wait for judgment, and only after receiving an unfavorable ruling argue that her affirmative defense precludes summary judgment. See e.g., <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 235 (7th Cir. 1991) ("A trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings.").

Because the defendant could have, but did not, raise the laches defense in the cross motions for summary judgment, we find that she has waived it for purposes of the trademark dilution claim. See <u>Federal Deposit Ins. Corp.</u>, 781 F.2d at 1268.

**CONCLUSION**

The defendant's motion for clarification is granted, as reflected above. The defendant's motion to alter or amend judgment is denied.

DATE:   October 10, 2001

ENTER:  _____
        John F. Grady, United States District Judge